

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

RWH:MH:DEW
F.#2003R03000

*One Pierrepont Plaza*
*Brooklyn, New York  11201*

*Mailing Address:*  147 Pierrepont Street
*Brooklyn, New York  11201*

March 30, 2006

BY ECF AND FAX

The Honorable Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Steven Caracappa, et al.
           Criminal Docket No. 05-192 (JBW)

Dear Judge Weinstein:

     The government writes in response to the defendant's request for a dismissal of the indictment in the trial of the above-referenced matter.  Contrary to the defendants' claims, the government has complied fully with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.  Moreover, the defendants have been aware of Casso's intimate familiarity with the facts that underlie the current prosecution since approximately 1994.  Further, the defendants' claim that they would have conducted the trial differently had they known the information they learned in today's conference call is belied by the manner in which the trial has been conducted as well as the content of Casso's purportedly exculpatory information.

I.    Statement of Facts

     On March 1, 1994, Anthony Casso pled guilty pursuant to a cooperation agreement to seventy crimes including racketeering and racketeering conspiracy in violation of Title 18, United States Code, Sections 1962(c)and 1962(d).  During his debriefings with the government in March 1994, Casso admitted to having used two New York City Police Department ("NYPD") detectives, via Burt Kaplan, to commit various crimes, including obstruction of justice and murder.  Casso identified the defendants as the NYCPD detectives that were Burton Kaplan's source.  This information was reported, in part, in various news articles in late March 1994.

Hon. Jack B. Weinstein
March 30, 2006
Page 2 of 8

The government decided to not use Anthony Casso in its trial against Vincent Gigante in 1996. Towards the end of that trial, Casso's attorney advised the government that Casso claimed that government witnesses Alphonse D'Arco and Salvatore Gravano had perjured themselves at trial. The government investigated these allegations and found them to be untrue. By letter dated August 8, 1997, the government advised Casso's attorney that it was the government's position that Casso breached the cooperation agreement because Casso had continued to commit crimes in prison and fabricated false information regarding the testimony of two other cooperating witnesses. Clearly, the defendants in this case were aware of Casso's allegations against D'Arco because they sought to admit Casso's attorney's letter to the government in a pretrial motion.

Casso thereafter filed a motion to compel specific performance of the cooperation agreement. On June 29, 1998, the Honorable Frederic Block denied Casso's motion in its entirety.

Sometime in 2001, Casso claimed to a journalist that he had a federal agent on his payroll. This was the first time that Casso had made such an admission.

In the spring of 2005, sometime shortly after the arrest of the defendants in this matter, Casso's attorney, John Lewis, Esq., contacted this office and inquired whether the government would be interested in using Anthony Casso as a witness in its case. The government declined his offer, citing his status as a breached cooperator.

In a letter dated July 10, 2005, to the United States Attorney for the Eastern District of New York, Casso claimed that he was wrongly breached and that his handling agents had directed him to be misleading in his statements to the government. He asked that " . . . a truce would be declared to unite. if it's all for justice." He also repeated his claim that D'Arco was not a credible witness, stating that "D'Arco knows absolutely nothing of those two detectives and that Bruno Facciola was never an informant."

In February 2006, in advance of trial in this matter, the Court ordered the government to disclose to the defense all of the relevant Federal Bureau of Investigation ("FBI") reports regarding interviews of Casso in which he identified the defendants or discussed using law enforcement sources to commit

Hon. Jack B. Weinstein
March 30, 2006
Page 3 of 8

crimes.  The government promptly provided the relevant reports to the defense in advance of trial.  The Court also invited the defendants to seek a deposition of Casso and adjourned the trial date for two weeks to accommodate them.  The defendants never sought to speak to Casso prior to trial.

On February 28, 2006, Mr. Hayes received a letter from Raymond Oechsle, in which Mr. Oechsle claimed that Anthony Casso and Burto Kaplan had colluded to frame the defendants.  Mr. Hayes filed a letter with the Court attaching Mr. Oechsle's letter on March 1, 2006.

Also on March 1, 2006, Casso contacted the United States Attorney's Office through his attorney, John Lewis, Esq. and stated that Casso would be willing to divulge the whereabouts of James Hydell's remains if the government agreed to certain conditions including a new plea agreement with a twenty-year cap, coverage for his involvement in the Hydell homicide and relocation to a the witness security facility.  The government declined to abide by the conditions but stated that we would proffer Casso regarding Hydell's remains with no promise for any consideration for such information.

On March 13, 2006, the government called Alphonse D'Arco to testify at trial.[1]  During his direct testimony, D'Arco testified as follows:

> And you had Stevie Crea, he was a captain at the last that I -- that I knew. He had a Drug Enforcement agent on the payroll, and then there was Sally Avellino, he had a government agent on the Gambino squad on the payroll.
> And then there was Anthony Casso, also the agent, paying for that information

---

[1]    Defense counsel was provided with D'Arco's 3500 material on or about January 25, 2006, well in advance of trial in this matter.  Accordingly, defense counsel have been aware that D'Arco told the government that he was told that Casso had an FBI agent on his payroll since that time.
Because Casso himself denied having an FBI agent during his proffers with the government and only in 2001 did he make mention of a corrupt FBI agent, there is no FBI report for Anthony Casso about such an agent.

>     through Sally Avellino.
> And he had -- and Vic Amuso, they had
> some bulls, meaning detectives, on the
> payroll.

(Tr. 126-27). Peppered throughout his testimony, including his cross-examination, were references to Casso having paid an agent for information in addition to the detectives. (Tr. at 127-28, 164-65, 246, 254, 267-68). The defense cross-examined D'Arco extensively about whether he was truthful about Casso having referred to "the bulls" because that term did not appear in any of D'Arco's 302s. In addition, D'Arco testified that he did not know the identities of the detectives and did not identify them in Court.

As the Court is aware, the government received a letter from Anthony Casso on Monday, March 26, 2006, in which Casso indicated that he had exculpatory information regarding the defendants. This was the first communication by Anthony Casso to the government wherein he claims that the defendants were not his or Burt Kaplan's source and are innocent of the crimes alleged in the indictment. Immediately upon receipt of that letter, the government notified defense counsel that Casso purported to have exculpatory information, prompting defense counsel to ask for the conference call with Casso, which the government arranged and which took place this afternoon.

Finally, on several occasions during the conference call with defense counsel today, Casso stated that he made several efforts to contact Mr. Hayes prior to trial. (Conf. Call Tr. at 1-2, 6, 25).

II. Argument

    A. The Defendants Have Known that Anthony Casso Possessed Material and Relevant Information Regarding the Subject Matter of this Trial Since 1994.

To be suppressed or withheld for the purposes of Brady, the information must be "known to the prosecution but unknown to the defense." See United States v. Agurs, 427 U.S. 97, 103 (1976); see also United States v. Ruggiero, 472 F.2d 599, 604 (2d Cir. 1973)("[A]ny allegation of suppression boils down to an assessment of what the State knows at trial in comparison to the knowledge held by the defense.") "Evidence is not 'suppressed' if the defendant either knew, . . . or should have known, . . . of

Hon. Jack B. Weinstein
March 30, 2006
Page 5 of 8

the essential facts permitting him to take advantage of any exculpatory evidence." United States v. LeRoy, 687 f.2d 610, 618 (2d Cir. 1982); see also, United States v. Salerno, 868 F.2d 524, 542 (2d Cir. 1989) (government satisfied its Brady obligations by informing defense that it "might want to interview witness").

As an initial matter, it is not the government that was dilatory in disclosing Casso's exculpatory information; rather, it is Casso himself who withheld the exculpatory information from the defendants. It is Casso, who for the first time in his March 4, 2006 letter (postmarked March 24 and received by the government March 26) claimed to have exculpatory, rather than inculpatory, information for the defense. The government can hardly be penalized for withholding from the defense statements that Casso had never previously made.

Moreover, the defendants have known that Casso was a participant in the actions charged against the defendants since the allegations first were made by Casso in 1994.[2] In that regard, Casso has always been a potential witness in this case. The defendants would never have called Casso based on the statements he had previously made because he had always implicated the defendants. This strategic maneuver is evidenced by the defendants' failure to seek a deposition of Casso weeks before trial at the invitation of the Court. Therefore, any claim that the defense was unaware that Casso might have material information for the defense is undercut by their knowledge that he had extensive information about the facts underlying this prosecution.

In addition, as Casso indicated several times on the conference call, he had "contacted [Mr. Hayes's] office before the trial started" regarding this matter, but never received any contact from Mr. Hayes and was, therefore, "forced to send a letter to the United States Attorney's Office." (Tr. at 2). Casso also stated, "I had someone contact Ed Hayes' office. And this is before the trial started, way before the trial started. And I had messages left there that I wanted to speak to them concerning the defendants and no one got back to me." (Tr. at 6). Far from withholding information from the defendants, the government actually became the only means by which Casso's information was deemed important enough for the defendants to

---

[2] Notably in 1994, both defendants were represented by their current counsel.

Hon. Jack B. Weinstein
March 30, 2006
Page 6 of 8

consider.  After all, it was only after Casso had been ignored by the defendants and contacted the government with his claims that the defendants became interested in speaking with him.

The defendants' claims that the government withheld exculpatory information is belied by the 302s the government provided the defense and the content of Casso's letters to the government.  Nowhere in any of the 302s from the government's interviews of Casso did he mention any source of information other than the defendants.  In fact, Casso did not make any such claims until after he was breached as a government cooperator in 1996.

Casso's July 10, 2005 letter does not contain exculpatory information from Casso.  Instead, in that letter, Casso expresses his desire to "unite" with the government for the "sake of justice."  It was not until the government received the March 4, 2006 letter from Casso on March 26, 2006 that the government learned Casso purported to have exculpatory information.  Immediately upon receipt of that letter, the government notified the defendants that Casso claimed to have exculpatory information.  Such notification is all that <u>Brady</u> requires.  See <u>Salerno</u>, 868 F.2d at 542.

B. <u>The Defendants' Claim that Their Trial Strategy Was Adversely Affected by the Government's Failure To Disclose the July 10, 2005 Letter Is Unfounded.</u>

The defendants claim that their trial strategy would have been different had they been aware of Casso's July 10, 2005 letter.  That claim is baseless.

In his July 10, 2005 letter, Casso makes the unremarkable claim that D'Arco is a liar.  This claim, which Casso has made since the <u>Gigante</u> trial, was known by the defense, as evidenced by their efforts to seek to admit the letter from Casso's attorney in which he claimed that D'Arco and Gravano had lied at trial.  Casso claimed that D'Arco does not know the identities of his detective informants, which was confirmed by D'Arco's 3500 material and by D'Arco's testimony in this trial.  As noted above, the defendants extensively cross-examined D'Arco both about his previous testimony, his use of the term "bulls," and his credibility.  One is hard-pressed to think of any additional line of cross-examination that would have come from disclosure of Casso's July 10, 2005 letter.

Hon. Jack B. Weinstein
March 30, 2006
Page 7 of 8

   Furthermore, the defendants were in possession of the letter from Mr. Oeschle since late February 2006.  In that letter, Mr. Oeschle catalogues the manner in which Kaplan and Casso colluded to frame the defendants.  Mr. Oeschle claims to have been a witness to the shenanigans in prison, during which Kaplan and Casso engaged in secret telephone calls to collaborate.  At no time, however, did either defense counsel cross-examine Kaplan about the subject of secret telephone calls between he and Casso.  Notably, the defendants asked the government for prison visitor records and telephone records between Kaplan and Lillian Casso, which they claimed they would use to buttress their contention that Casso and Kaplan had colluded.  Clearly, however, the defendants chose a different strategy with Kaplan, not because they did not know about the allegations of collusion that Casso is now making, but for other strategic reasons.  The defendants could well have cross-examined Kaplan about these issues, but they chose not to.

 C. <u>No Delay Is Warranted in this Case.</u>

   The defendants have asked the Court to adjourn the trial to allow them to call Casso or recall government witnesses and to obtain the notes and reports of Andrew Weissman, George Stamboulidis and two FBI agents.  Such delay is unnecessary.

   The government has consulted with the United States Marshals Service ("USMS") regarding the production of Casso for trial testimony.  Should the defendants wish to call Casso to testify, the USMS has stated that it can have him in Court by Tuesday, April 4, 2006.  Moreover, should the defendants wish to recall any other government witness, the government can have that witness available in time for Court on Tuesday.

   Further, the defendants seek to obtain various notes and reports of purported interviews of Casso in approximately 1997, at which time Casso allegedly told them of exculpatory information about the defendants.  The government has spoken to these parties, and each of them has denied that Casso made any such statements.  Instead, these meetings related to the government's concerns regarding Casso's viability as a government cooperating witness.  At no time during these meetings did Casso make any statements—inculpatory or exculpatory—about the defendants.  In any event, there are no notes or 302s from these meetings.  Finally, in February 2006, the government provided defense counsel with any and all information from Casso in its possession regarding the charges in the indictment.

Hon. Jack B. Weinstein
March 30, 2006
Page 8 of 8

III. Conclusion

      Given the sequence of events, any claim of prosecutorial misconduct is both unwarranted and unfounded. Therefore, the defendants' request for a mistrial should be denied.

                                      Respectfully submitted,

                                      ROSLYNN R. MAUSKOPF
                                      United States Attorney

                        By:  _____
                                      Robert W. Henoch
                                      Mitra Hormozi
                                      Daniel E. Wenner
                                      Assistant U.S. Attorney

cc:   Defense Counsel
       Clerk of the Court (JBW)