

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RH:MH:DEW                          *One Pierrepont Plaza*
F.#2003R03000                      *Brooklyn, New York 11201*

                    *Mailing Address:*  *147 Pierrepont Street*
                                        *Brooklyn, New York 11201*

                                   June 12, 2006

VIA ECF AND FACSIMILE

The Honorable Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

          Re:  United States v. Stephen Caracappa, et al.
               Criminal Docket No. 05-192 (JBW)

Dear Judge Weinstein:

          The government writes in response to Stephen
Caracappa's supplemental memorandum of June 5, 2005 and Louis
Eppolito's letter of the same date.  Based on these submissions
and the Court's orders regarding the evidentiary hearing on the
effectiveness of trial counsel, the government seeks to preclude
the testimony of Edward Hayes, Esq., and Rae Koshetz, Esq.,
unless Caracappa provides an affidavit specifying allegations of
ineffectiveness that involve claims that cannot be resolved
because they pertain to matters outside of the trial record.
Furthermore, the government seeks to preclude the testimony of
David Giordano, Jack Ryan and Andrea Eppolito.

A.    Background

          The defendants Eppolito and Caracappa retained Bruce
Cutler, Esq., and Mr. Hayes respectively when the allegations
against them first surfaced in 1994.  That representation
continued when the defendants were arrested in March 2005.  Up
through the time of the jury's verdict, the defendants had
nothing but praise for their lawyers.  Indeed, during a hearing,
pursuant to United States v. Curcio, 680 F.2d 881 (2d Cir. 1982),
held on July 5, 2005, subsequent to the Court's warnings that
because of Mr. Cutler's previous clientele, his reputation might
adversely affect Eppolito at trial, Eppolito stated unequivocally
that he wanted Mr. Cutler as his trial counsel.  (July 5, 2005
Tr. at 10-17).

Hon. Jack B. Weinstein                    2                    June 12, 2006

        After the guilty verdict, however, the defendants
changed their tune.  On April 17, 2006, press reports indicated
that Eppolito was unhappy with Mr. Cutler.  Those reports
prompted the Court to order a hearing to determine whether Mr.
Cutler should be relieved because of a conflict of interest.
(April 18, 2006 Order).  Subsequently, each defendant obtained
new counsel, and each defendant has identified a variety of
reasons for ineffectiveness on the part of their trial counsel.

        On May 4, 2006, the Court ordered "an evidentiary
hearing to determine the facts outside the present record" to
allow it to make a decision "with respect to the competency of
the defense and denial of the right to testify."  (May 4, 2006
Order at 1).  The thrust of Eppolito's ineffectiveness accusation
is that he insisted that he testify on his own behalf, but Mr.
Cutler refused to allow him to do so and did not advise him that
the choice was his, and not Mr. Cutler's.  In light of that
assertion, but to avoid hauling Messrs. Cutler and Hayes into
court to face unsubstantiated accusations, on May 18, 2006, the
Court ordered that at the evidentiary hearing, "the court will
require any defendant raising a claim of ineffectiveness of trial
counsel to testify before his former counsel will be required to
testify."  (May 18, 2006 Order at 2).

        At the sentencing proceedings on June 5, 2006, the
Court reiterated its May 18 order, stating, "I will not hear Mr.
Hayes unless I hear first from Mr. Caracappa, in the same way
that my order insisted that Mr. Eppolito lay a foundation for
calling his former attorney."  (June 5, 2006 Tr. at 48).  The
Court further stated that "I am not going to call a distinguished
member of the federal bar or of the New York bar to answer a
charge unless it has first been supported."  (June 5, 2006 Tr. at
48).

B.    Caracappa's Claims of Ineffectiveness, Which Are Without
      Merit, Can Be Decided Based on the Record and Do Not Require
      an Evidentiary Hearing

        In his supplemental memorandum, Caracappa claims that
Mr. Hayes "rendered services that were so deficient that they
constituted ineffective assistance of counsel."  (Mem. at 3).
Caracappa accuses Mr. Hayes of failing to be prepared for trial,
having no coherent trial strategy, failing to address the statute
of limitations issue, and failing to investigate on behalf of
Caracappa.  Those claims do not justify a hearing and are without
merit.

Hon. Jack B. Weinstein            3            June 12, 2006

    1.  <u>Caracappa Has Not Proffered Any Evidence or Claim that Necessitates a Hearing</u>

       Nowhere in his papers does Caracappa make any claim that requires a hearing.  Each of Caracappa's claims is based entirely on the trial record and raises no issues that require testimony at an evidentiary hearing.[1]

       In determining whether a hearing is required, courts look "primarily to the affidavit or other evidence proffered in support of the application in order to determine whether, if the evidence should be offered at a hearing, <u>it would be admissible proof entitling the petitioner to relief</u>." <u>Dalli v. United States</u>, 491 F.2d 758, 760 (2d Cir. 1974) (emphasis supplied); <u>see also</u> <u>United States v. Malcolm</u>, 432 F.2d 809 (2d Cir. 1970) (holding that a hearing is not required where the allegations are insufficient in law, "immaterial, undisputed, vague, conclusory, palpably false or patently frivolous"); <u>United States v. Accardi</u>, 379 F.2d 312 (2d Cir. 1967) (where the petition consisted of unsworn conclusory statement that were contradicted by the trial record, trial judge appropriately denied hearing). "Mere generalities or hearsay statements will not normally entitle the applicant to a hearing," since such hearsay would be inadmissible at the hearing itself. <u>Dalli</u>, 481 F.2d at 760 (internal citations omitted).  Rather, "[t]he petitioner must set forth specific facts which he is in a position to establish by competent evidence." <u>Id</u>. at 761; <u>accord</u> <u>Hayden v. United States</u>, 814 F.2d 888, 892 (2d Cir. 1987); <u>United States v. Aiello</u>, 814 F.2d 109, 113 (2d Cir. 1987).

       Here, Caracappa proffers no evidence, other than assertions based on the trial record and vague and conclusory generalities, that suggest he is entitled to relief.  As outlined below, Caracappa's contentions are that Mr. Hayes did not (a) attend every court appearing, (b) address the statute of limitations issue, or (c) have a cohesive trial strategy.  Each of these allegations is based entirely on the trial record and requires no further findings of fact at an evidentiary hearing.  Similarly, Caracappa's attempt to justify a hearing by complaining that Mr. Hayes failed to properly investigate and by proffering that the investigators would testify about strategies

---

    [1]  The only reason this Court should hold a hearing on Caracappa's claims is if Mr. Hayes and Ms. Koshetz wish to present evidence on their own behalf.  <u>See</u> <u>Sparman v. Edwards</u>, 154 F.3d 51, 52 (2d Cir. 1998) (per curiam).

Hon. Jack B. Weinstein              4                    June 12, 2006

that Mr. Hayes failed to pursue (Mem. at 10-11) is equally
unavailing.

        First, the fact that Mr. Hayes employed investigators
at all undermines Caracappa's claim that Mr. Hayes did not
conduct a proper or thorough investigation.  After all, the
inquiry is not whether Caracappa's counsel conducted the most
thorough investigation imaginable, but whether the investigation
he did pursue was reasonable.  See Strickland v. Washington, 466
U.S. 668, 690-91 (1984) ("[S]trategic choices made after less
than complete investigation are reasonable precisely to the
extent that reasonable professional judgements support the
limitations on investigation.").

        Second, the trial record amply demonstrates that, far
from ignoring the investigators, Mr. Hayes relied on the
purported fruits of their labor.  For example, according to Mr.
Hayes's summation, the investigators uncovered evidence of
monetary transactions, which Mr. Hayes used to cross-examine
Burton Kaplan in an effort to undermine his credibility.  (Trial
T. 861-66, 3072-73).  Furthermore, based on that investigation,
Caracappa called James H. Harris, a former Drug Enforcement
Administration special agent, to testify about money laundering
in an attempt to bolster the allegations against Kaplan.  (Trial
T. 2846-52).  Similarly, Mr. Hayes consulted an expert on
excavation and digging, Anthony McLoughlin, who was ready to
testify in the defense case, undoubtedly to discredit Peter
Franzone by undermining his account of how he and Frank Santora,
Jr., had disposed of Israel Greenwald's body.  (Letter from
Edward Hayes to Robert Henoch, dated Mar. 26, 2006).[2]

_____

        [2] Gersten v. Senkowski, 426 F.3d 588 (2d Cir. 2005), upon
which Caracappa relies (Mem. at 12-13), is inapposite.  There,
based in part on expert testimony, the defendant was convicted of
sexually abusing his daughter.  Id. at 591, 597-98.  The trial
attorney was deemed ineffective because he failed to review the
evidence or investigate the experts' conclusions, which prevented
him from undermining the victim's testimony.  Id. at 610.  Unlike
the attorney in Gersten, Mr. Hayes vigorously cross-examined the
government's witnesses and used information uncovered through
investigation to attack their credibility.  (Trial T. 244-65,
861-66, 2108-17, 2370-81, 2452-54, 2504-06).  And, aside from the
testimony of forensic anthropologist Bradley Adams, there was no
scientific evidence in this case.  Nonetheless, Mr. Hayes
consulted an expert to refute Dr. Adams's testimony.

Hon. Jack B. Weinstein                5                    June 12, 2006

          Finally, even if the investigators would testify that
they told Mr. Hayes about various avenues to pursue, but Mr.
Hayes chose not to pursue them, his assistance could not be
deemed ineffective.  "A lawyer's decision not to pursue a defense
does not constitute deficient performance if, as is typically the
case, the lawyer has a reasonable justification for the
decision." DeLuca v. Lord, 77 F.3d 578, 588 n.3 (2d Cir. 1996);
accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005).  It is
not for this Court to second guess such strategic decisions.  See
Aguirre, 912 F.2d at 563 (reversing a trial court's
ineffectiveness finding because it second guessed the decisions
of trial counsel).  The testimony proffered by the investigators,
therefore, is wholly irrelevant to whether Mr. Hayes supplied
effective representation to Caracappa, which is apparent from the
record.

          Because Mr. Hayes used the services of the
investigators to pursue a strategy at trial, the Court need not
hold a hearing to learn about their internal disagreements.  Such
defense team discord is not relevant to the issue of whether
Caracappa received effective assistance under Strickland.  In
essence, Caracappa's claims are based on Mr. Hayes's performance
at trial, not on issues that are de hors the record.  Under that
circumstance, no evidentiary hearing is necessary.

     2.   Caracappa Cannot Demonstrate That His Counsels'
          Performance Fell Below Objective Standards of
          Reasonableness

          Regardless, Caracappa has not even made a prima facie
showing of ineffectiveness to warrant any further inquiry into
the matter.  Instead, his claim is "unacceptably based on
hindsight," United States v. Jones, 918 F.2d 9, 11 (2d Cir.
1990), and impermissibly seeks to "grade counsel's performance,"
rather than to ascertain whether that performance caused an
unreliable outcome, Strickland, 466 U.S. at 696-97.  As set forth
below, the Court should deny Caracappa's claim of
ineffectiveness, which distorts the record and ignores his
acquiescence to Mr. Hayes's performance during trial.  Moreover,
as explained, because each claim is based entirely on the record,
the Court need not hold an evidentiary hearing.

          a.   Caracappa Was Represented by Both Edward Hayes and
               Rae Koshetz

          As an initial matter, Caracappa bases his entire claim
of ineffective assistance on the efforts of Mr. Hayes alone.
Caracappa wholly ignores the fact that he was represented at

Hon. Jack B. Weinstein                 6                  June 12, 2006

trial not only by Mr. Hayes, but also by Ms. Koshetz, who
together provided more than adequate assistance to him.
Caracappa gripes that Ms. Koshetz was given the task of cross-
examining Stephen Corso and in arguing the statute of limitations
issue in the summation.  (Mem. at 7-8).  Without the whiff of
allegation that Ms. Koshetz failed to adequately represent him on
those occasions, however, Caracappa cannot satisfy the first
prong of the <u>Strickland</u> test.  <u>See</u> <u>United States v. Verbitskaya</u>,
406 F.3d 1324, 1338 (11th Cir. 2005) (denying ineffective
assistance claim against lead counsel because the defendant
consented to lead counsel's absence, and co-counsel represented
the defendant effectively); <u>Mason v. Mitchell</u>, 320 F.3d 604, 617
(6th Cir. 2003) (same).

        While Caracappa now criticizes Mr. Hayes for being
absent from Court on Friday, March 31, 2006 (Mem. at 8), on that
date, he expressly consented to Mr. Hayes's absence.  When the
Court learned that Mr. Hayes would be absent, the following
colloquy ensued:

            THE COURT: Mr. Caracappa, do you consent
        to your main counsel being absent at this
        important moment?
            CARACAPPA:  Yes, I do.  We spoke about
        it yesterday.
            THE COURT:  And you have been fully
        informed that he wasn't going to be here?
            CARACAPPA:  Yes, I was, your Honor.
            THE COURT:  And you discussed all of the
        important decisions that have to be made this
        morning?
            CARACAPPA:  Yes, I did your Honor.
            THE COURT:  And you are satisfied to
        have co-counsel represent you today?
            CARACAPPA:  Absolutely, your Honor.
            THE COURT:  And you know that that might
        adversely affect your case?
            CARACAPPA:  Yes, I do, your Honor.
            THE COURT:  And you waive your
        constitutional right to have counsel of your
        own choosing?
            CARACAPPA:  Yes, I do, your Honor.

(Trial T. 2845).  Similarly, Caracappa explicitly consented to
Mr. Hayes's absence from the charge conference.  (Trial T. 2920).
Caracappa cannot now cry foul because of Mr. Hayes's absences.
<u>Cf</u>. <u>Zedner v. United States</u>, --- U.S. ---, 2006 WL 1519360, at *9
(U.S. June 5, 2006) ("[W]here a party assumes a certain position

Hon. Jack B. Weinstein            7            June 12, 2006

in a legal proceeding, and succeeds in maintaining that position,
he may not thereafter, simply because his interests have changed,
assume a contrary position. . . ." (internal quotation marks and
citations omitted)).  Regardless, Caracappa was adequately
represented by Ms. Koshetz on those days and throughout the
trial.

       b.   <u>Caracappa's Counsel Presented a Cohesive Trial
           Strategy</u>

      Caracappa now claims that, based on the record, Mr.
Hayes had no perceptible trial strategy.  (Mem. at 4-5).  That
claim is undermined by the record, which demonstrates that Mr.
Hayes consistently and vigorously attacked the credibility of the
government's witnesses.  Mr. Hayes confronted Alphonse D'Arco
with testimony he had given at previous trials.  (Trial T. 244-
65).  Mr. Hayes attacked Burton Kaplan with documents pertaining
to a financial transaction in Antigua and accused him of lying to
the government about it.  (Trial T. 861-66).   Mr. Hayes cross-
examined Thomas Galpine about his previous heroin trafficking and
accused him of failing to disclose it to the government.  (Trial
T. 2108-17)  And, Mr. Hayes attacked Peter Franzone's credibility
on cross-examination and in his cross-examination of Thomas
Licata and Joseph Pagnotta.  (Trial T. 2370-81, 2452-54, 2504-
06).  Further, the bulk of his closing argument focused on why
the jury should not believe the government's witnesses.  (Trial
T. 3074-86).

      In truth, Caracappa's complaint is not that Mr. Hayes
had no trial strategy, but that the trial strategy Mr. Hayes did
have was unsuccessful.  Such matters of strategy "made after
thorough investigation of law and facts relevant to plausible
options are virtually unchallengeable." <u>Strickland</u>, 466 U.S. at
690; <u>see also</u> <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d
Cir. 1987) ("decisions which fall squarely within the ambit of
trial strategy . . . if reasonably made, will not constitute a
bases for an ineffective assistance claim"); <u>Cuevas v. Henderson</u>,
801 F.2d 586, 590 (2d Cir. 1986) (rejecting a claim based on the
fact that the strategy was unsuccessful).  "Judicial scrutiny of
a counsel's performance must be highly deferential" and "every
effort [must] be made to eliminate the distorting effects of
hindsight, to reconstruct the circumstances of counsel's
challenged conduct, and to evaluate the conduct from counsel's
perspective at the time." <u>Strickland</u>, 466 U.S. at 689.  While a
different attorney might have defended this case differently does
not render Caracappa's trial counsel ineffective.  <u>See</u> <u>United
States v. Aguirre</u>, 912 F.2d 555, 563 (2d Cir. 1990) ("The
question is not whether some other course would have been more

Hon. Jack B. Weinstein                8                June 12, 2006

successful.  That can always be argued after a case has been
lost.  The question is whether counsel's conduct of the defense
was a reasonable course at the time and came within the standards
for acceptable representation."); <u>United States v. Matalon</u>, 445
F.2d 1215, 1219 (2d Cir. 1971) ("Whether these decisions were
particularly wise or whether another trial lawyer would or would
not have employed the same tactics is irrelevant.").  To prevail,
Caracappa must overcome the "presumption that, under the
circumstances, the challenged action 'might be considered sound
trial strategy,'" <u>Strickland</u>, 466 U.S. at 689 (quoting <u>Michel v.
Louisiana</u>, 350 U.S. 91, 101 (1955)), which he cannot do in this
case.

      c.   <u>Statute of Limitations Was Addressed</u>

      Caracappa claims that Mr. Hayes failed to "frame the
issue" of the legal elements of RICO because he failed to
prepare.  (Mem. at 5-6).  This claim is no different than the
claim that Mr. Hayes had no trial strategy, addressed above.
Furthermore, Caracappa's suggestion that his attorneys ignored
the crucial statute of limitations issue is belied by the fact
that Ms. Koshetz coherently and forcefully argued that the
statute of limitations had expired, that the drug predicates had
no relationship to the predicates alleged to have occurred in the
1980s and 1990s, and that the government had cobbled together a
series of crimes to overcome that problem.  (Trial T. 3087-97).

     3.   <u>Caracappa Was Not Prejudiced</u>

      On the prejudice prong of <u>Strickland</u>, Caracappa makes
the conclusory assertion that "an effective presentation of all
aspects of this case would likely have resulted in an acquittal
on all charges against Caracappa."  (Mem. at 14-15).  That
baseless and unexplained contention is undermined by the fact
that the government presented overwhelming evidence of guilt at
trial.

      While Caracappa contends that the statute of
limitations issue is a close one (Mem. at 14), the jury resolved
it by specifically finding beyond a reasonable doubt that the
conspiracy continued into the limitations period.  The jury also
found Caracappa guilty of two narcotics offenses, which occurred
in February 2005.  As explained above, Ms. Koshetz took up the
arguments that Caracappa claims would have led the jury to acquit
(Trial T. 3096-97), but it did not do so.  Based on the record
and the special findings of the jury, Caracappa cannot claim that
the result would have been different if Mr. Hayes had made
different strategic choices.

Hon. Jack B. Weinstein               9               June 12, 2006

        All told, Caracappa cannot either prong of the
<u>Strickland</u> test; therefore, his claim for ineffective assistance
of counsel should be denied.
C.      <u>The Court Should Limit the Evidence Eppolito May Present at
        the Evidentiary Hearing</u>

        In his June 5 letter, Eppolito explained that he is
claiming ineffectiveness because "he was prohibited from
participating in his own defense, testifying, and at times, even
speaking with his attorney." (Ltr. at 1).  In that letter,
Eppolito states that in addition to himself, Mr. Cutler, and
Bettina Schein, Esq., he wishes to introduce testimony from
Messrs. Hayes, Giordano and Ryan, as well as Ms. Eppolito.  For
the reasons that follow, neither Messrs. Hayes, Giordano or Ryan,
nor Ms. Eppolito, should be permitted to testify at the hearing.

        As for Mr. Hayes, there is no basis for him to testify
unless and until Caracappa testifies to make allegations of
ineffectiveness against him, as the Court ordered on May 18.
Moreover, as the government has explained, there is no basis to
conclude that Caracappa received ineffective assistance, which
renders any testimony by Mr. Hayes unnecessary.

        Testimony from Messrs. Giordano and Ryan would provide
no benefit to the Court.  According to Eppolito's letter, both
Messrs. Giordano and Ryan will testify about their
"participation" in the case.  (Ltr. at 2).  The hearing was
ordered to determine whether Mr. Cutler prevented Eppolito from
participating in his own defense, testifying or speaking to him.
(Ltr. at 1).  The participation of investigators in the
investigation has no bearing whatever on those issues and should
be excluded.

        Similarly, Ms. Eppolito has exactly nothing to
contribute to the matters at issue in the hearing.  Eppolito's
letter indicates that Ms. Eppolito would testify "regarding her
personal observations of Mr. Cutler prohibiting Mr. Eppolito from
speaking with him or participating in his own defense." (Ltr. at
2).  There is no indication whatsoever that Ms. Eppolito was
party to any private communications between her father and Mr.
Cutler.  Nor is there any hint that she attended or participated
in any defense strategy meetings prior to or during trial.
Rather it appears that she wishes to testify to share with the
Court what Your Honor was able to view Yourself, that is, how Mr.
Cutler and Eppolito interacted at trial.  As the Court stated:

        I observed repeatedly Mr. Eppolito conferring
        with counsel.  Before <u>voir</u> <u>dire</u> was finished,

Hon. Jack B. Weinstein              10                    June 12, 2006

> counsel went back and consulted Mr. Eppolito
> about what he wanted to do with the jury.  At
> the end of each cross-examination, counsel
> went back to see whether Mr. Eppolito wanted
> to have anything further to say.  Mr.
> Eppolito constantly wrote notes and handed
> them to counsel, although you suggest counsel
> didn't read them.  That was not my
> impression.

(May 3, 2006 Tr. at 31).  Ms. Eppolito has nothing to add to the
Court's own perceptions.  It would be as useful for the Court to
hear testimony from members of the press, who were also present
and attentive during the entirety of the trial.  Certainly, the
Court has no interest in hearing such testimony, and it should
preclude Ms. Eppolito from offering it.

D.   Conclusion

        The government respectfully requests that the Court
deny Caracappa's ineffective assistance of counsel claim without
a hearing and preclude Messrs. Hayes, Giordano and Ryan and Ms.
Eppolito from testifying at the hearing regarding Eppolito's
claim.

                              Respectfully submitted,

                              ROSLYNN R. MAUSKOPF
                              United States Attorney

                    By:  _____
                              Robert Henoch
                              Mitra Hormozi
                              Daniel Wenner
                              Assistant U.S. Attorneys

cc: Defense Counsel
     Clerk of the Court (JBW)